The bill was filed by Simon Mathews, and other children of testator, George Mathews, for an account, among other things, of the purchase money of a lot of land, sold by the Master in Equity, in 1835.
Mrs. Mathews, by her answer, denies that she proved the will, or ever acted as executrix. That she signed the bill, which was filed to procure an order for- the sale of the lot, on the assurance, that it was matter of form; that the Master received the money, and paid over the same to W. S. Elliott, the executor of testator, in his own wrong.
The Master’s report charges W. S. Elliott with the receipt of $1,076 25, received from T. O. Elliott, then Master, on 23d June, -1835, and with four-hundred and twenty-eight dollars, being the amount of the purchaser’s bond, and one year’s interest, as received by him on the 16th June, 1836, and found a balance against her estate, of $2,554 6.
Edward Gamage testified, that he purchased from W. S. Elliott, and the Master in Chancery, T. O. Elliott, conveyed the premises to his trustees, by deed, dated 9th June, 1835.
His Honor, Chancellor Harper’s decree is, as follows:
“ George Mathews, a free person of color, by his will, dated in 1831, devised his whole estate, consisting of a house and lot in Charleston, and several slaves, to his five younger children, reciting by his will, that he had purchased the freedom of their mother, in 1817. He appointed *411 Mrs. Martha Ann Mathews and William Savage Elliott, now deceased, his executor and executrix ; of whom the latter, alone, proved the will, and acted in execution of it.
Soon after the testator’s decease, a bill was filed in this Court, by the executor and executrix, signed by Mrs. Mathews, for the purpose of obtaining a sale of the house and lot. An order for sale was made ; the property was sold for $1500, and the money received by the executor, William Savage Elliott. By the order of the Court, confirming the Master’s report, recommending a sale, it wras directed, that the proceeds should be re-invested by the executor and executrix, and the investment reported to the Court. No investment was ever made. The executor also sold a negro boy, John. William S. Elliott died in May, 1840. The bill is for an account of the estate of George Mathews against his executrix, and against Mrs. Anna Elliott, the -executrix of Wm. S. Elliott. The matters of account have been referred to the Master, who has reported a balance, of $2,554 63, against Wm. S. Elliott’s estate.”
“It is apprehended, that the estate of William S. Elliott will prove insolvent, and the principal question made in the case is, whether the executrix, Mrs. Martha Ann Mathews, will be liable to make good his devastavit. This respects the proceeds of the house and lot alone, for as to the personal estate there is no doubt but that it came into the hands of the executor, without any act, or intervention of the executrix. The argument is that, having joined in the bill, she concurred in an act which enabled him to receive the money, and according to the doctrine in administrators of Johnson vs. Executors of Johnson, (2 Hill, 293,) she must be responsible, though no part of it ever came into her hands. It is with, much reluctance that I come to the conclusion, that she must be held responsible. It is to be observed, that as executors, they had nothing to do with the landthere does not appear to have been any necessity to sell for the payment of debts, and in procuring a sale of the land, they seem to have volunteered to act as trustees; and though it is said in the cases, that when a trustee joins in a receipt or conveyance, by which his co-trustee is enabled to receive the money, he is not *412 responsible, because it was necessary for him to join for conformity; otherwise, in the case of an executor, where there is no such necessity; yet in this case, I think there was no necessity for her to join; there was no necessity for her to volunteer as trustee. She states in her answer, that she is of retired habits, inexperienced in business, and that her signing of the bill was represented to her as merely a matter of form. I regret, that she should have been wrongly advised; but in a legal point of view, I must regard it as her voluntary act. In Brice vs. Stakes, (11 Ves. 319,) it was provided, by the instrument creating the trust, that the trustees “ should not be chargeable with or accountable for, any more of the said trust monies and premises, than he or they should actually receive, nor with, or for, any loss, which should happen of the same monies and premises, or any part thereof: so as such loss happened without his or their wilful default; nor the one for the other of them; but each of them only for his own acts, deeds, receipts, disbursements and defaults.” It was also provided, that the trustees might sell and re-invest. Two trustees did join in a conveyance, and one of them, who was the acting trustee, received the purchase money. He made no re-investment, but kept the money, sometimes loaning it out, for ten years, when he died insolvent, and Lord Eldon held his co-trustee liable. For though an effectual conveyance could not be made without his joining, yet it did not appear that any change of investment was necessary; and in that respect, there was no necessity for his joining, and the Chancellor held, that he was bound to see to the re-investment of his co-trustee. Though not so long a time, (only about five years,) has elapsed, during which the money remained in the co-trustee’s hands, I think the present a stronger case. As I have said, there was no necessity for Mrs. Mathews to join in procuring this sale. Being a party to the suit, she must be bound by the decree. The decree is, that the executor and executrix, shall invest and report to the Court, making it the duty of both to see to the investment. By consulting the records of the Court, she might, at any time, have seen that the executor had not reported any investment. If she *413 had applied to the Court, at any time during the five years, the investment by him would have been enforced.”
Petigru, for motion.
Elliott must have paid to W. S. Elliott, upon his own receipt — receipt not produced, Gill vs.-, Hard. 314. Receipt never questioned, but thought too hard on executors, 1 Eden, 357. Wesley vs. Clarke, 4 Ves. 596. Hobby vs. Blakenslon, 16 Ves. 477. Shipbrooke vs. Kitchenbrooke, 3 Swanst, 1 p. 63 — 7 East, 246. Smith vs. Cross. — Rule; Ex’or. may be liable to creditor and not to legatees. Master had no right to pay to W. S. Elliott, 2 Sto. Eq. 520 — if trustees. Decree enabled him to recieve. Duty of Master-, Dudley, Ch. R. 174, 2 Dess. 629. 3 Dess. 94-104. 3 Sto. Pl. 77-92. Id. 159-162 — money was in bank. Sadler vs. Hobbes & Sadler, 2 Br. C. C.
“ It is therefore ordered and decreed, that the report of the Master be confirmed, and the defendant, Mrs. Ann Elliott, out of the estate of her testator, pay to the complainants, Hercules Mathews, Edward Mathews, Sabina Mathews, Julian Mathews, and Phoebe Mathews, one-sixth part of the money, reported by the Master, and the remaining sixth part, to C. W. Crouch, (assignee of Simon Mathews,) and if the estate of the said William Savage Elliott shall not be sufficient for the payment of such amount, that the deficiency be made good by the defendant, Mrs. Martha Ann Mathews, to the extent of the price of the house and lot, which came into the hands of the said William S. Elliott.”
The defendant, Martha Ann Mathews, appeals from this decree, on the grounds:
1. That T. O. Elliott, the Master in Equity, paid the money to William S.' Elliott, in his own wrong ; and that either Mrs. Matthews is not liable at all,'or liable only in the last resort.
2. That plaintiff should have amended his bill, and made the Master in Equity a party.

Per Curiam.

The court has considered the ground of appeal, but is unable to distinguish this case, in principle, *414 from the authorities, cited by the Chancellor. The decree is therefore affirmed.
Petigru & Lessesne, pro appellant.
Thompson, contra.
BENJ. F. DUNKIN.